UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309-CR-SEITZ/GARBER

UNITED STATES OF AMERICA,
         Plaintiff,

v.

JEFFERY BASS, et al.
         Defendants.
_____

GOVERNMENT'S MOTION TO DISQUALIFY
ATTORNEY LOTHAR R. GENGE
AND INCORPORATED MEMORANDUM OF LAW

The United States of America, through its undersigned attorneys, respectfully files this Motion to Disqualify attorney Lothar Genge from representing defendant Jeffrey Bass and incorporated memorandum of law and in support thereof states as follows:[1]

I.    **INTRODUCTION**

Former Assistant United States Attorney (AUSA) Lothar R. Genge must be disqualified from representing defendant Jeffrey Bass on two distinct grounds. (1) he was involved in the investigation of the case pending before this Court by authorizing the consensual recording of defendants who are charged in this indictment; and, (2) he gained privileged information by virtue of his relationship with government witness Louis Maione who was a prospective witness in the case AUSA Genge supervised and who is also a witness in this case. The government relies upon prevailing case law and the

---

[1] Undersigned counsel has been advised by attorney Lothar Genge that he opposes the instant motion filed by the government.

Florida Bar Rule 4-1.11 in support of this motion. Based upon this authority, the government submits that AUSA Genge must be disqualified on either ground.

## II. BACKGROUND

This is a prosecution of members and associates of the Trafficante Organized Crime Family of the La Cosa Nostra ("The Trafficante Family") under the provisions of the Racketeering Influenced and Corrupt Organizations statute (RICO)(Title 18, United States Code, Section 1962) and related offenses. The defendant Jeffrey Bass, who is represented by attorney Lothar Genge, is charged in Count One with RICO Conspiracy, in violation of Title 18, United States Code, Section 1962(d); in Count Two with operating an illegal interstate gambling business, in violation of Title 18, United States Code, Section 1955; and in Count Six with conspiracy to launder funds derived from extortionate extensions of credit and from the operation of an interstate gambling business, in violation of Title 18, United States Code, Section 1956(h).

The indictment charges that defendant Bass participated in the affairs of the RICO enterprise by operating an illegal interstate gambling business under the direction of Steve Raffa and John Mamone. Raffa was the leader of the South Florida faction of the Trafficante Family.[2] John Mamone was Raffa's second in command who managed the day-to-day operations of the organization. Thus, in

---

[2] As the Court is aware, Raffa took his own life after the return of the indictment.

order to establish the case against Bass, the government must demonstrate the existence and scope of the RICO enterprise.

The existence and structure of the RICO enterprise will be established in part through the testimony of Louis Maione. Attorney Genge, when he was an Assistant United States Attorney, approved the numerous consensual recordings made by Maione during the course of the investigation, debriefed Maione, and sponsored Maione into the Witness Security Program.[3] Thus, Genge gained confidential information from his professional relationship with Maione.

Maione, among other things, was authorized by Genge to record a meeting among Raffa, Mamone and Gambino soldier Auggie Corrao that occurred on June 13, 1996. The government intends to offer the tape recording of this meeting in evidence in this case. The meeting concerned a gambling debt owed by a third party to the Trafficante Crime Family. During the course of this "mafia sit down" attended by Maione, the structure of the Trafficante and Gambino criminal enterprises were discussed. Maione will testify concerning the meaning and significance of this meeting. Thus,

---

[3] In 1982, Lothar R. Genge, a trial attorney employed by the Department of Justice, was transferred from the Brooklyn Strike force to the Miami Strike Force where he was placed in charge of the Fort Lauderdale Field Office. Mr. Genge remained in charge of that office until December 1990, at which time the Strike Forces throughout the country were merged with the respective United States Attorneys' Offices in the districts where they were located. Mr. Genge remained in the employment of the United States Attorney's Office in the Southern District of Florida as a line assistant until 1997, when he retired.

although Maione has no direct knowledge of Genge's client (Bass), his testimony is critical in establishing the existence of the criminal enterprise of which Genge's client is charged with being a participant.

Under well established precedent and the Rules of the Florida Bar, Genge must be disqualified from participating in this case because: 1) Genge was in a position to gain confidential information about the investigation of this case; 2) Genge was in a position to obtain confidential information about a key government witness, Louis Maione; and, 3) Genge's participation in this case, given his prior involvement as an Assistant United States Attorney, would undermine the confidence of the public in the integrity of the judicial system. Florida Bar Rule 4-1.11; United States v. Ostrer, 597 F.2d 337, 340 (2nd Cir. 1979); United States v. Miller, 624 F.2d 1198, 1202-03 (3d Cir. 1980); United States v. Uzzi, 549 F.Supp. 979, 982-84 (S.D.N.Y. 1982); United States v. Brothers, 856 F.Supp. 370, 376 (M.D. Tenn. 1992).

**III. SUMMARY OF MAIONE'S INVOLVEMENT WITH FORMER AUSA GENGE**

In about 1994, Maione began working with the Miami Division of the FBI as a cooperating witness on a case involving the South Florida crew of the Gambino LCN Family. Soon thereafter, evidence was developed that established that the South Florida criminal crew was specializing in loansharking, gambling, stolen property and extortion, among other crimes. The South Florida crew was being

supervised by then acting boss, Nicholas "Little Nicky" Corozzo and other high-echelon members and associates of the Family. Then AUSA Genge, who was assigned to the case in or about 1995, was the lead prosecutor on the case until early 1997, after the case was indicted. During the investigatory stage of the case, then AUSA Genge was responsible for supervising two court authorized wiretap orders relating to the targets of the investigation and the preparation of one search warrant. During this time period, Maione, who regularly recorded subjects of the investigation, acted under the authorization given by Genge to the FBI pursuant to required FBI policy.

In December 1996, as a result of Maione's cooperation and other evidence, Corozzo and eight members and/or associates of the South Florida crew of the Gambino Crime Family were charged in an indictment with RICO conspiracy, loansharking and dealing in stolen property. Among the predicate acts charged in the RICO conspiracy was a conspiracy on the part of the enterprise members to murder Louis Maione. United States v. Corozzo, Case number 96-620-CR-Roetgger. The indictment in that case was signed by then AUSA Genge (Attachment A). Furthermore, the prosecutive memorandum in which the testimony of Maione was detailed, was authored by former AUSA Genge.[4]

---

[4] Should the Court wish to inspect the Prosecutive Memorandum signed by AUSA Genge, the government will provide it in camera. See, United States v. Smith, 995 F.2d 662, 675-76 (7th Cir. 1993)(noting that the information about the former AUSA's involvement in the investigation

Although former AUSA Genge was eventually reassigned sometime after the case was indicted, he was responsible for presenting the evidence to the grand jury, returning the indictment against Corozzo and presenting the government's evidence at the detention hearing.[5] In this capacity, former AUSA Genge met with Maione and debriefed him on the investigation. Genge represented the government at the detention hearings of Corozzo and his co-defendants David and Sydney Alwais. In arguing for their detention, former AUSA Genge proffered the recordings of Maione as credible evidence supporting the pre-trial detention of all three defendants.

Even more significantly, former AUSA Genge formally sponsored Maione into the U.S. Marshal's Witness Security Program. In this regard, Genge had access to the confidential information needed to properly prepare the application. Genge signed Maione's application and concluded, among other things, that the physical threat to Maione was "immediate and real." Genge supported this application by confirming that there was evidence that the Gambino Family had the reputation of killing witnesses. In addition, during that investigation, the Gambino Family discussed sending

---

was presented <u>in camera</u> because of the sensitive information contained).

[5] In approximately January 1997, supervision of the Corozzo case was transferred to another Assistant United States Attorney.

teams of members and associates of the Family to various locations throughout the country to locate and murder Maione.[6]

### IV. SUMMARY OF MAIONE'S RELEVANT TESTIMONY IN THIS CASE

During the trial of this case, Louis Maione will testify about his knowledge of the operation of the Trafficante Family, including extortion, gambling, dealing in stolen property, and other criminal acts.

Maione will state that during the undercover operation while under the direction of the FBI, he worked for the then acting Gambino boss, Nicholas Corozzo. In that capacity in early 1996, Maione met a person named Louis Costanza, who was the manager of the bar and restaurant at the Ocean Manor hotel in Fort Lauderdale. Once Costanza learned that Maione was associated with Corozzo, the acting boss of the Gambinos, Costanza asked for Corozzo's help in dealing with a gambling debt owed to another bookmaker who was pressuring him for payment. Thereafter, Maione and Sal Pecchio, another associate of the Gambino Family, interjected themselves into the controversy over Costanza's gambling debt. Within a few weeks, Raffa and Mamone demanded a "sit down" with Corozzo to discuss Costanza's gambling debt.

---

[6] Should the Court wish to inspect the Application, the government will provide it in camera. See United States v. Smith, 995 F.2d 662, 675-76 (7th Cir. 1993)(noting that the information about the former AUSA's involvement in the investigation was presented in camera because of the sensitive nature of the information provided).

7

On June 13, 1996, Maione met with Steve Raffa, John Mamone and Augie Corrao, a soldier in the Gambino Family, to discuss the gambling debt. Maione consensually recorded the approximately half-hour meeting at the hotel. In that meeting, Raffa, Mamone, and Corrao discussed the structure of the Trafficante and Gambino crime families and their interrelationship with each other. This discussion was needed to clarify the problem concerning the gambling debit. There, Mamone aggressively laid claim to the gambling debt owed to his organization (Trafficante Family) and demanded that the debt be paid. Mamone also acknowledged that the victim had been previously assaulted because he was disrespectful by refusing to meet with members of the organization. Also, Mamone indicated that he and Raffa were upset that the Gambino Family had interfered with the operation of their organization.[7]

V.   **GENGE MUST BE DISQUALIFIED BECAUSE HE HAS A CONFLICT OF INTEREST ARISING OUT OF HIS ROLE AS AN AUSA IN THE INVESTIGATION LEAD TO THE INSTANT CHARGES**

In this case it is beyond dispute that Genge: 1) personally participated in the use of Maione as an undercover cooperating government witness, including the granting of authorization for Maione to make an undercover recordings that will be introduced into evidence in this prosecution; 2) personally participated in

---

[7] This consensual recording was made pursuant to the authorization by then AUSA Genge.

8

debriefing Maione concerning Maione's knowledge of criminal activities; 3) personally and formally sponsored Maione's application into the U.S. Marshal's Witness Security Program; and 4) personally supervised the inextricably intertwined investigation and prosecution of Nicholas Corozzo in which Maione was the primary cooperating witness.

It is well settled that when a former Assistant United States Attorney (AUSA) personally participated in an investigation that is inextricably intertwined with the pending prosecution that former AUSA should be disqualified from representing a criminal defendant in the pending prosecution. <u>United States v Smith</u>, 995 F.2d 662, 675-76 (7th Cir. 1993)(former supervisory AUSA disqualified because as an AUSA he was involved in an investigation related to the prosecution and signed the immunity agreement for a government witness that was being called in the current prosecution); <u>United States v. Ostrer</u>, 597 F.2d 337, 339 (2d Cir. 1979)(former AUSA disqualified because as an AUSA he had used a witness who was also testifying in the current prosecution and he had previously prosecuted two current government witnesses); <u>United States v. Uzzi</u>, 549 F.Supp 979, 982 (S.D.N.Y. 1982)(former AUSA disqualified when he was involved in an investigation that was "substantially related" to the ongoing prosecution); <u>United States v. Brothers</u>, 856 F.Supp. 370, 377 (M.D. Tenn. 1992)(former AUSA disqualified when he was involved in the issuance of search warrants of co-defendant when he was an AUSA).

There are sound policy reasons underlying the need for the disqualification of a former AUSA who had personally participated in an investigation that is inextricably intertwined with a pending prosecution. First, the former AUSA is in a position to unfairly use confidential information that he learned as an AUSA in cross-examining a government witness with whom he previously had a professional relationship as an AUSA. It would violate fundamental principles of the attorney-client relationship for a former AUSA to use the information he obtained as an AUSA against his former client (the United States) in whose name the prosecution is brought. United States v. Smith, 995 F.2d at 675; United States v. Ostrer, 597 F.2d at 340. Furthermore, because there is a presumption in such cases that AUSA's receive confidential information, the AUSA should be disqualified "even absent direct proof that confidential information was communicated." United States v. Smith, 995 F.2d at 675; United States v Ostrer, 597 F.2d at 340. See also, United States v. Uzzi, 549 F.Supp. 979, 982 (S.D.N.Y. 1982)(because of the presumption that confidential information is communicated the Court need not "embroil itself in the question of which confidences or secrets remain fresh in [the attorney's] mind, which are forever buried in oblivion, and which are presently forgotten but could, upon prompting, be summoned again into consciousness").

Secondly, allowing "an attorney to represent a client in a matter with which he became uniquely familiar during his public

10

employment may encourage Government attorneys to conduct their offices with an eye toward future private employment." United States v. Ostrer, 597 F.2d at 340.

Thirdly, allowing "such representation also unduly favors those litigants whose attorneys were able to gather valuable pertinent information while on the Government payroll." United States v. Ostrer, 597 F.2d at 340.

This principle that a former AUSA should be disqualified from representing a criminal defendant when the AUSA personally participated in an investigation that is inextricably intertwined with the pending prosecution is confirmed by the Florida disciplinary rules. Florida Bar Rule 4-1.11, which governs private practice by former government attorneys, provides, in pertinent part, that:

> A lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation.
>
> Fla. Bar Rule 4-1.11 (Emphasis supplied)
>
> The term matter is defined by the Florida bar Rules to be: [A]ny judicial or other proceeding, application, request for ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter involving a specific party or parties...
>
> Fla. Bar Rule 4-1.11 (Emphasis supplied).

As demonstrated, Genge personally participated in an investigation using cooperating witness Maione that is inextricably intertwined with the instant prosecution. This personal

11

participation included Genge's filing of an application with the Office of Enforcement Operations seeking a determination as to whether the government witness Maione should be granted admission to the U.S. Marshal's Witness Security Program.

Although the Sixth Amendment creates a presumption in favor of a defendant hiring an attorney of choice to represent him. This right is clearly not absolute.  For example, the defendant does not have the right to hire an attorney "who has had a previous or ongoing relationship with an opposing party, even when the opposing party is the Government."  Wheat v. United States, 486 U.S. 153, 159 (1988).  As set forth above, it is well settled that where a former Assistant United States Attorney has had a relationship with the very case in which a criminal defendant wishes representation, the defendant is barred from retaining that former prosecutor.  In this case, not only has Genge had an association with certain aspects of the case, he also has had a close relationship with one of the most important witnesses in this case by virtue of his involvement with the Corozzo prosecution. Therefore, for these two important ethical reasons, either one of which would be sufficient for disqualification, defendant Bass cannot cure this conflict of interest by waiver of his Sixth

Amendment right to effective representation.[8] See, e.g., United States v. Ostrer, 597 F.2d at 341.

Thus, it is beyond peradventure that Genge should be disqualified because he personally participated in an investigation that is inextricably intertwined with the pending prosecution because both investigations involved the use of Maione as a cooperating witness. Indeed, one of the very recordings authorized by Genge will be offered into evidence to establish the existence of the RICO enterprise with which Genge's client is charged with being a member. Genge's disqualification is, accordingly, required. United States v Smith, 995 F.2d at 675-76; United States v. Ostrer, 597 F.2d at 339; United States v. Uzzi, 549 F.Supp at 982 (S.D.N.Y. 1982); United States v. Brothers, 856 F.Supp. at 377; Fla. Bar. Rule 4-1.11.

Moreover, the fact that Maione did not directly deal with Genge's client is irrelevant to the issue of disqualification. Maione is one of the primary witnesses who will demonstrate the existence and scope of the RICO enterprise charged in the indictment. Thus, Genge's client would have a powerful incentive to discredit Maione's testimony through vigorous cross-examination.

---

[8] In the past, attorney Genge has informed undersigned counsel that Bass would waive his Sixth Amendment right to effective assistance of counsel. However, as set forth above, under the facts of this case, such a waiver is inadequate because this is the type of conflict of interest that cannot be waived by the defendant but rather may be only waived by the government. See United States v. Uzzu, 549 F.Supp.at 984. In this matter, the government will not waive its right to confidentiality.

Genge, because he is presumed to be in possession of confidential information derived from his use of Maione as a cooperating witness, is in a unique capacity to improperly use this information. Thus, Genge is in precisely the position of the former prosecutors who were disqualified in <u>United States v Smith</u>, 995 F.2d at 675-76; <u>United States v. Ostrer</u>, 597 F.2d at 339; <u>United States v. Uzzi</u>, 549 F.Supp at 982; <u>United States v. Brothers</u>, 856 F.Supp. at 377, because they had personally participated in investigations that were inextricably intertwined with subsequent prosecutions in which they sought to represent defendants.

If Genge were allowed to remain on this case, he would be in a position to use confidential information in formulating his defense strategy. In addition, Genge would be able to use his unique relationship with Maione, as his sponsor into the U.S. Marshal's Witness Security Program, to formulate questions on cross-examination of Maione. This is improper in that Genge would be directly using confidential, privileged information he gained in his position as a public servant to serve the private interest of his client thereby undermining the integrity of the judicial system.

## VI. CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court enter an order disqualifying attorney Lothar R. Genge from representing defendant Jeffrey Bass.

Respectfully submitted,

GUY E. LEWIS
UNITED STATES ATTORNEY

By: _____
BRIAN McCORMICK
ASSISTANT UNITED STATES ATTORNEY

By: _____
DIANA L.W. FERNANDEZ
ASSISTANT UNITED STATES ATTORNEY

By: _____
MICHAEL J. DITTOE
ASSISTANT UNITED STATES ATTORNEY

<u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that a true and correct copy of the foregoing was mailed this 26th day of January, 2001 to:

David Rothman, Esq.
First Union Financial Ctr.
200 S Biscayne Blvd., Ste 2690
Miami, FL 33131
(Counsel for John Mamone)

John Howes, Esq.
633 S.E. Third Ave., Suite 4F
Fort Lauderdale, FL 33302
(Counsel for Fred Morgenstern)

Ana M. Jhones, Esq.
Bayside Plaza, Suite 625
330 Biscayne Blvd
Miami, FL 33132
(Counsel for David Morgenstern)

Emmanuel Perez, Esq.
2121 Ponce de Leon Blvd.
Suite 290
Coral Gables, FL 33134-5222
(Counsel for Joseph Silvestri)

Donald R. Spadaro, Esq.
1000 S. Federal Hwy., Ste 103
Fort Lauderdale, FL 33316
(Counsel for Julius Chiusano)

Brian L. Tannebaum, Esq.
First Union Financial Center
200 South Biscayne Blvd., Ste. 2690
Miami, FL 33131
(Counsel for Michael Buccinna)

Lothar Genge, Esq.
1020 Russell Drive
Highland Beach, FL 33487
(Counsel for Jeffrey Bass)

John F. Cotrone, Esq.
509 S.E. 9th St., Suite 1
Fort Lauderdale, FL 33316
(Counsel for Frederick Scarola)

Charles Wender, Esq.
190 W. Palmetto Park Road
Boca Raton, FL 33432
(Counsel for Giuseppe Bellitto)

James Benjamin, Esq.
1 Financial Plaza, Suite 1615
Fort Lauderdale, FL 33394
(Counsel for Mark Carattini)

Peter Raben, Esq.
2665 S. Bayshore Dr., Ste 1206
Coconut Grove, FL 33133
(Counsel for Paul DiFilippi)

Neil M. Mameroff, Esq.
100 S.E. 2nd Ave., Suite 3350
Miami, FL 33131
(Counsel for Anson Klinger)

Brian H. Bieber, Esq.
2600 Douglas Rd., Penthouse 1
Coral Gables, FL 33134
(Counsel for Joseph Spitaleri)

Jon May, Esq.
200 East Broward Blvd.
Suite 1210
Fort Lauderdale, FL 33301
(Counsel for Charles Clay)

Richard Hamar, Esq.
Maria Hamar, Esq.
2437 Briarcrest Rd.
Beverly Hills, CA 90210
(Counsel for Charles Clay)

Steve Kreisberg, Esq.
3250 Mary St., #400
Coconut Grove, FL 33133
(Counsel for Peggy Preston)

Philip R. Horowitz, Esq.
12651 S. Dixie Hwy., Ste. 328
Miami, FL 33156
(Counsel for Mark Weiss)

David G. Vinikoor, Esq.
420 S.E. 12th Street
Fort Lauderdale, FL 33316
(Counsel for Jacolyn Baruch)

Jeffrey M. Harris, Esq.
One East Broward Blvd., #1500
Fort Lauderdale, FL 33301
(Counsel for David Bell)

                                               J. BRIAN McCORMICK
                                               ASSISTANT UNITED STATES ATTORNEY