UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



CASE NO. 00-6309-CR-SEITZ/GARBER

UNITED STATES OF AMERICA,
    Plaintiff,

v.

JEFFREY BASS, et al.
    Defendants.
_____/

## DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION TO DISQUALIFY ATTORNEY LOTHAR R. GENGE

The government has moved this Court to disqualify Lothar R. Genge as Jeffrey Bass' chosen attorney in this case. However, as demonstrated in Part I, below, the government's factual representations in support of its motion are grossly misleading. In actuality, the undersigned's representation of Jeffrey Bass does not involve any actual conflict of interests and foreseeable prejudice. Accordingly, under prevailing case law the government's motion to disqualify the undersigned must be denied. Even assuming, arguendo, the existence of an actual conflict of interests and foreseeable prejudice, as set forth in Part II, below, other remedies short of the disqualification of Mr. Bass' chosen counsel are available. Such

1

alternatives would be less burdensome to the defendant's right to counsel of his choice than the disqualification of his attorney demanded by the government.

## BACKGROUND[1]

Between 1995 and 1996, as a member of the Fort Lauderdale Organized Crime Strike Force Section of the U.S. Attorney's Office, the undersigned was assigned to assist the FBI in its investigation of the criminal activities of Nicholas Corozzo and other alleged members of the Gambino LCN family in South Florida. The undersigned's principal role in this investigation was to obtain and supervise court authorized wiretaps relating to Corozzo's "South Florida Crew" and to present the Corozzo/Gambino family case to the grand jury.

As a result of this investigation, in December 1996, Nicholas Corozzo, and eight members and/or associates of the South Florida Crew of the Gambino family were indicted for engaging in a RICO conspiracy, for loansharking and for dealing

---

[1] The undersigned resigned from the U.S. Attorney's Office for the Southern District of Florida in 1997. Prior thereto, during some twenty years with the Department of Justice and the U.S. Attorney's Office in New York City and in the Southern District of Florida, the undersigned specialized in the investigation and prosecution of numerous high profile white collar cases involving corrupt union officials and members of organized crime. Among other cases, the undersigned investigated and prosecuted members and associates of the Gambino, Columbo, Luchese and Maggadino La Cosa Nostra [LCN] families.

in stolen property.[2] The predicate acts in this RICO conspiracy involved (1) a conspiracy to commit murder, (2) a conspiracy to kidnap, (3) retaliating against a witness, (4) the making and collecting of extortionate extensions of credit, (5) the receipt of stolen property, and (6) interstate travel in aid of racketeering.[3]

At or about the same time that the undersigned was working on the Corozzo investigation, AUSA Brian McCormick and other attorneys in the office were involved in a separate investigation into the alleged criminal activities of Steve Raffa and his associates in South Florida Crew of the Trafficante LCN family. The undersigned was not assigned to the Raffa investigation, nor was he privy to the details of said investigation. Upon information and belief, the investigation of Steve Raffa and his associates supervised by AUSA Brian McCormick led to the instant Raffa/Trafficante family indictment returned on or about October 24, 2000.

The October 24, 2000 indictment charges Steve Raffa and some eighteen

---

[2] In addition to Corozzo, the indictment named as defendants Leonard Dimaria, Ralph Davino, Jr., Anthony Ruggiano, Jr., Sydney Alwais, David Alwais, Salvatore Pecchio, Robert Engel and David Furman. At page 5 of its motion to disqualify the undersigned the government indicates that it has attached the Corozzo indictment as "Attachment A." However, the Corozzo indictment was never attached to the copy of the government's motion mailed to the undersigned.

[3] The Corozzo/Gambino family indictment identified its alleged loanshark victims as James Miles McGrath, Craig Bagon, Howard Stern, Leonard Frasca, Scott Itkin, and Martin Lorenz. According to the indictment the criminal activity involved generally occurred between 1992 and 1995.

alleged members and associates of the South Florida Crew of the Trafficante LCN family with a RICO conspiracy and predicate crimes alleging the operation of (1) an illegal gambling business, (2) obstruction of justice, (3) money laundering, (4) bank fraud, (5) mail and wire fraud, (6) making and collecting extortionate loans and (7) interstate and foreign travel in aid of racketeering.

Even a cursory examination of both indictments shows that the two are unrelated. Nevertheless, seven-times the government claims that the two investigations were "inextricably intertwined." [Government's Motion, pp. 9, 10, 11, 13 and 14]. But that is not the case. Indeed, substantially all of the predicate criminal acts alleged in the October 24, 2000 Raffa/Trafficante RICO indictment took place <u>after</u> the return of the Corozzo/Gambino RICO indictment. For example, Count 3 of the Raffa/Trafficante indictment alleges criminal activity beginning in or about 1999; Counts 4 through 6 allege criminal activity beginning in or about 1996; Count 7 alleges criminal activity between 1998 and 2000; and Counts 8 through 70 charge criminal acts which allegedly occurred between September 1999 and December 1999. [4]

---

[4] The undersigned would also urge this Court to accept the government's offer to examine <u>in camera</u> the Prosecutive Memorandum written by the undersigned in 1996 in connection with the Corozzo case. Such a review will confirm that the Corozzo and Raffa investigations were not one and the same and were not "inextricably intertwined" as represented to this Court by the government.

The name of Jeffrey Bass never surfaced during the undersigned's involvement in the Gambino/Corozzo investigation in 1995 and 1996. Nor is the undersigned aware of when and under what circumstances Jeffrey Bass first came to the attention of the FBI and AUSA McCormick. Jeffrey Bass was first publicly identified as an alleged associate of the Trafficante family in the October 24, 2000 indictment. This indictment names Jeffrey Bass as a defendant in the Raffa/Trafficante RICO Count, as well as in a second count charging the operating a gambling business and a third count charging a conspiracy to launder gambling proceeds.[5]

After entering his notice of appearance in the case and reviewing some of the discovery materials provided by the government, the undersigned proceeded to enter into plea negotiations with AUSA Brian McCormick. However, these plea discussions proved fruitless. Shortly after the plea discussions were terminated, the government filed its instant motion to disqualify the undersigned from any further participation in this case as Jeffrey Bass' attorney.

In its motion the government takes the position that former AUSA Lothar R.

---

[5] Shortly after the return of Raffa/Trafficante indictment, Jeffrey Bass retained the undersigned to represent him in his case. Jeffrey Bass retained the undersigned, in part, because of the latter's familiarity with organized crime cases as well as his extensive expertise in complex criminal trials.

5

Genge must be disqualified from representing Jeffrey Bass because "(1) he was involved in the investigation of the case pending before this Court by authorizing the consensual recording of defendants who are charged in this indictment; and, (2) he gained privileged information by virtue of his relationship with government witness Louis Maione who was a prospective witness in the case AUSA Genge supervised [the Corozzo/Gambino Case] and who is also a witness in this case [the Raffa/Trafficante Case]." (Government's Motion to Disqualify, p. 1). According to the government, the Corozzo investigation "is inextricably intertwined" with the Raffa case. However, since the two indictments involve different organized crime families, different defendants, and different crimes committed at different times, the government's seven-times repeated statement that the two investigations were "inextricably intertwined" should be viewed with skepticism and suspicion.

## ARGUMENT

### Part I

The government's factual representations are misleading and neither prevailing case law nor ethical considerations support its disqualification request.

There are two prospective sources of harm in any multiple representation case. First, the attorney whose representation is being challenged could be tempted to use privileged information received from a former client, now a witness in the

second proceeding, to impeach the former client, thereby violating the Code of Professional Responsibility by not preserving the confidences of the client. Second, the attorney might fail to conduct a rigorous cross-examination on behalf of the second client [the defendant] for fear of misusing confidential information. See Wheat v. United States, 486 U.S. 153, 156-157 (1988).

Nevertheless, in view of a defendant's Sixth Amendment right to be represented by the attorney of his choice, disqualification of the retained attorney becomes justifiable under the case law only where a court first determines that the multiple representation presents an "actual conflict" and "foreseeable prejudice." Wheat v. United States, supra; (actual conflict and foreseeable prejudice where client who plead guilty would likely testify against co-defendant represented by same attorney); United States v. Dolan, 570 F.2d 1177, 1183 (3rd Cir. 1978) (actual conflict and foreseeable prejudice where different plea bargains for defendants represented by same attorney). However, as demonstrated below, the undersigned's prior "witness" representation of Louis Maione and his present "defense" representation of Jeffrey Bass involves neither any actual conflict of interests nor any foreseeable prejudice.

To begin with, the government's claim that the Corozzo/Gambino and Raffa/Trafficante investigations became "inextricably intertwined" and

"substantially related" because of a June 13, 1996 consensual recording between Louis Maione, Steve Raffa, John Mamone and one Augie Corrao - which the undersigned has no recollection of even authorizing - is pure nonsense. Even assuming such authorization was given by the undersigned, it would have likely been given to the FBI as a part of Louis Maione's role in the Corozzo investigation.[6] Moreover, the undersigned has no recollection of ever reviewing the June 13, 1996 recording; nor would he have presented this alleged conversation to the grand jury as a part of the Corozzo case.

Furthermore, both the Gambino investigation and the instant Trafficante investigation involved hundreds, if not thousands of additional recorded conversations. They also involved separately issued court authorized wiretaps. And the undersigned only reviewed and authorized the wiretaps in the Corozzo case.[7] Additionally, upon information and belief, Louis Maione is the only common witness, out of the many dozens of witnesses involved in both cases. Thus, for the

---

[6] At the same time, it is at least also possible that the undersigned may have approved the FBI's use of Louis Maione to make a consensually recorded conversation on or about June 13, 1996 in the Raffa investigation. However, such approval on the part of the undersigned would have amounted to a mere ministerial act to accommodate the FBI.

[7] The Raffa wiretaps occurred years after the undersigned had retired from government service.

government to now argue that the two investigation were "inextricably intertwined" and that the undersigned played a substantial role in both is disingenuous.

At the same time, the government is correct in stating that the undersigned met with Louis Maione and debriefed Maione in connection with the Corozzo investigation. The undersigned also formally sponsored Maione into the U.S. Marshal's Witness Security Program. Furthermore, in support of the application the undersigned expressed his then held opinion that, as a result of his cooperation in the Corozzo case, Louis Maione faced serious physical threats from members of the Gambino LCN family.[8] However, as indicated above, none of this has anything to do with the instant case - involving different crimes families, different defendants, different times, and different crimes. And it certainly has nothing to do with Jeffrey Bass.

The government also errs when it argues that the fact that Louis Maione never dealt directly with Jeffrey Bass is irrelevant to its disqualification motion. See Government's Motion, p. 13. To the contrary, Maione's lack of dealings with, or

---

[8] The undersigned would urge this Court to accept the government's offer and examine in camera the application submitted on behalf of Louis Maione for acceptance into the U.S. Marshall's Witness Protection Program. Such a review will show that the application generally contains historical information none of which would be appropriate material for cross-examination. Furthermore, after admission into the program, the Marshall's Service never provides updated information about protected witnesses, even to Assistant U.S. Attorneys.

even knowledge of Jeffrey Bass, is central to the disqualification issue. Indeed, all of the cases affirming a disqualification of a former government attorney in a subsequent criminal case have involved situations where the attorney played a substantial role in the earlier investigation of the same individual. See, for example. United States v. Kitchin, 592 F. 2d 900, 902 (5th Cir. 1979), cert. denied, 444 U.S. 843 (1979) (associate of defendant's attorney handled earlier stage of suit on government's behalf against same individual defendant, attorney disqualified); United States v. Trafficante, 328 F.2d 117, 120 (5th Cir. 1964) (former IRS attorney who handled assessment of taxes against Trafficante disqualified from representing Trafficante in subsequent government suits for foreclosure of liens for balance due on the same income taxes). In accord, see also the cases cited by the government at page 9 of its motion.

None of the cases cited by the government even approach the instant factual situation where the undersigned's prior investigation involved "a group of individuals associated in fact" within the meaning of Title 18, United States Code, Section 1961(4) - and not the individual he now represents. Clearly, where two individuals are involved in the same criminal transaction and deal directly with each other, subsequent representation by the same attorney is much more likely to create an actual conflict of interests than in a case where, as here, the clients never dealt

with each other.

Indeed, since Louis Maione never dealt with Jeffrey Bass the two prospective sources of harm normally found in any multiple representation do not exist in this case. Because Louis Maione will provide no direct or even circumstantial evidence against Jeffrey Bass, a rigorous cross-examination of Maione will not be required. As a consequence, the undersigned also would not be tempted to use any privileged information in order to effectively impeach Maione.

AUSA Brian McCormick's claim at page 13 of the government's motion, that "Genge's client would have a powerful incentive to discredit Maione's testimony through vigorous cross-examination" amounts to extravagent exaggeration. In truth and in fact, and as an experienced AUSA like Brian McCormick well knows, a "vigorous cross-examination" of Mr. Maione on behalf of Mr. Bass is likely to require no more than two questions: (1) whether he [Maione] ever met Jeffrey Bass [Answer: No]; and (2) whether to his knowledge Jeffrey Bass was a member or associate of the Trafficante family [Answer: No].

The government also engages in hyperbole when it claims that Louis Maione will be a key witness in its case. Mr. Maione may be a key witness against others, but he is certainly not a key witness against Jeffrey Bass. As indicated above, since Maione never dealt with, or had any knowledge of, Jeffrey Bass it is hard to

eliminate any possible purported abuse of any alleged confidences divulged by the prospective government witness, Louis Maione.

For its part, the government has rejected even these offers and has stated that it will accept nothing less than the undersigned's disqualification as Jeffrey Bass' chosen counsel. However, it is respectfully submitted that under the facts of this case the government's position is unreasonable and unwarranted and should be rejected by the Court.

WHEREFORE, for the reasons set forth herein, the defendant Jeffrey Bass respectfully requests that this Honorable Court reject the government's instant motion to disqualify the undersigned as his counsel of choice in this matter.

Respectfully submitted,

LOTHAR R. GENGE Esq.
Attorney for Jeffrey Bass
Florida Bar No. 385832
1020 Russell Drive
Highland Beach, Florida 33487
Tel. (561) 276-7038
Fax (561) 279-2105

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing was mailed this 19th day of February, 2001 to:

David Rothman, Esq.
First Union Financial Ctr.
200 S. Biscayne Blvd., Ste 2690
Miami, Fl. 33131
(Counsel for John Mamone)

Charles Wender, Esq.
190 W. Palmetto Park Road
Boca Raton, Fl. 33432
(Counsel for Giuseppe Bellitto)

John Howes, Esq.
633 S.E. Third Ave., Suite 4F
Fort Lauderdale, Fl. 33302
(Counsel for Fred Morgenstern)

James Benjamin, Esq.
1 Financial Plaza, Ste 1615
Fort Lauderdale, Fl. 33394
(Counsel for Mark Carattini)

Ana M. Jones, Esq.
Bayside Plaza, Ste 625
330 Biscayne Blvd.
Miami, Fl. 33132
(Counsel for David Morgenstern)

Peter Raben, Esq.
2665 S. Bayshore Dr., Ste 1206
Coconut Grove, Fl. 33133
(Counsel for Paul DiFilippi)

Emmanuel Perez, Esq.
2121 Ponce de Leon Blvd., Ste 290
Coral Gables, Fl. 33134
(Counsel for Joseph Silvestri)

Neil M. Mamroff, Esq.
100 S.E. 2nd Ave., Ste 3350
Miami, Fl. 33131
(Counsel for Anson Klinger)

Donald R. Spadaro, Esq.
1000 S. Federal Hwy., Ste 103
Fort Lauderdale, Fl. 33316
(Counsel for Julius Chiusano)

Brian H. Bieber, Esq.
2600 Douglas Rd., PH 1
Coral Gables, Fl. 33134
(Counsel for Joseph Spitaleri)

Brian L. Tannebaum, Esq.
First Union Financial Center
200 So. Biscayne Blvd., Ste 2690
Miami, Fl. 33131
(Counsel for Michael Buccinna)

Jon May, Esq.
200 East Broward Blvd.
Suite 1210
Fort Lauderdale, Fl. 33301
(Counsel for Charles Clay)

| | |
|---|---|
| John F. Cotrone, Esq.<br>509 S.E. 9th St., Ste 1<br>Fort Lauderdale, Fl. 33316<br>(Counsel for Michael Buccinna) | Richard Hamar, Esq.<br>Maria Hamar, Esq.<br>2437 Briarcrest Rd.<br>Beverly Hills, Ca. 90210<br>(Counsel for Charles Clay) |
| Steve Kreisberg, Esq.<br>3250 Mary St., Ste 400<br>Coconut Grove, Fl. 33133<br>(Counsel for Peggy Preston) | Philip R. Horowitz, Esq.<br>12651 S. Dixie Hwy., Ste 328<br>Miami, Fl., 33156<br>(Counsel for Mark Weiss) |
| David G. Vinikoor, Esq.<br>420 S.E. 12th Street<br>Fort Lauderdale, Fl. 33316<br>(Counsel for Jacolyn Baruch) | Jeffrey M. Harris, Esq.<br>One East Broward Blvd.,<br>Suite 1500<br>Fort Lauderdale, Fl. 33301<br>(Counsel for David Bell) |
| J. Brian McCormick, AUSA<br>U.S. Attorney's Office<br>500 East Broward Blvd. Ste 700<br>Fort Lauderdale, Fl. 33394 | |

_____
Lothar R. Genge